311 F.3d 1139
 Lawrence O'CONNOR; Margaret O'Connor; Kathy Hecker; Mary Jane Vroman; Nicky Pelaez, On Behalf of Herself and All Others Similarly Situated; Laverne F. Barina, Mary Hillerstein; Sharon Grandinetti; Donald Reed; Terri Aungst; Ruby Diamond; Marjorie Extract; Heather Hultgren; Patricia Lev; Jody Smith; Maralyn Soifer; The Estate of Marjorie Taaffe; The Estate of Robin Lynn Trench; Cheryl Wernke; Carol Wolfsen; Stephanie Zakarian; Harold Samuels; Joyce Samuels; Carlene Getter; Estate of Bernard Hudson; Estate of Eugene D. Mauck, Plaintiffs, and
Mary Christine Crilley, Carmela Anzilotti; Faith Arnold; Lila Arnold; Linda Blaustein; Howard Bleecker; Melissa Bolster; Ashle Bryant; Jennifer Cady; Heather Cass; Briana Alys Chappell; Mark Leslie Davis; Madeline Felkins; Robert Grandinetti; Norman Gross; Susan Hemming; Julie King; Margaret Kirby; Joy E. Lee;
Helen Pasquini; Laurel Ann Peyton; Rosemary Pitts; Emanuel Rubin; William Rueger; Pauline Sablow; Hariet Spero; Donna Stone; Jerry Stone; Mildred Strausburg; Miles Teicher; Jacqueline Teicher; Ralph Tremonti; Victor Wollman; Estate of Edward J. Barina; Kathleen Brucato; Gerald Creinin; Roy Fischman; Grace Highfield; Miriam Hintz; Estate of Jason E. Hudlett; Joan Mann; Shirley Orban; Marion Rosen; Denise Seth-Hunter; Randall Trench; Don Varley; Helen White; The Estate of Marrilee Fay Reed; The Estate of Archibald P. Cameron; The Estate of Hai-Chou Chu; The Estate of Ralph Tremonti, Sr.; The Estate of Paula Jean Trevino, Plaintiffs-Appellants,
v.
BOEING NORTH AMERICAN, INC., a Delaware Corporation; Rockwell International Corporation, Defendants-Appellees.
 No. 00-56141.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 1, 2001.
 Filed November 27, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED A. Barry Cappello, Cappello & McCann LLP, Santa Barbara, CA; Tina B. Nieves, Hector G. Gancedo, Gancedo & Nieves, Pasadena, CA, for the plaintiffs-appellants.
 William W. Schofield, Paul, Hastings, Janofsky & Walker LLP, San Francisco, CA, for the defendants-appellees.
 Before: O'SCANNLAIN and PAEZ, Circuit Judges, and KING, District Judge.*
 Opinion by Judge PAEZ; Partial Concurrence and Partial Dissent by Judge O'SCANNLAIN.
 PAEZ, Circuit Judge.
 
 
 1
 In 1997, Plaintiffs filed this action against Boeing North America, Inc. and Rockwell International Corporation ("Defendants"), alleging that hazardous radioactive and non-radioactive substances released from four nuclear and rocket testing facilities (the "Rocketdyne facilities") caused their latent illnesses. The district court granted summary judgment against Plaintiffs, ruling as a matter of law that California's one-year statute of limitations barred their state law tort claims. O'Connor v. Boeing N. Am., Inc., 92 F.Supp.2d 1026, 1036-52 (C.D.Cal.), modified on reconsideration, 114 F.Supp.2d 949 (2000).[1] Plaintiffs appeal, asking us to determine when California's statute of limitations began to run on their claims.
 
 
 2
 Under the California statute of limitations, a plaintiff has one year from the date of injury to bring a personal injury or wrongful death claim. All of the Plaintiffs learned of their diagnoses more than one year before they filed suit. Unless Plaintiffs can show that delayed discovery of their claims warrants tolling of the statute of limitations, the one-year limit bars their claims.
 
 
 3
 To answer this question, we must decide whether the district court erred in declining to apply the delayed discovery rule of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") to Plaintiffs' claims that the release of hazardous substances caused their injuries. See 42 U.S.C. § 9658. CERCLA does not create a federal statute of limitations. Rather, it retains the state statute of limitations, and establishes a federal standard that governs when delayed discovery of a plaintiff's claims will toll the statute of limitations. This federal standard trumps a less generous state rule that would start the limitations period earlier. Thus, whether CERCLA applies here turns on whether CERCLA's federal standard is more generous than California law in tolling California's one-year statute of limitations.
 
 
 4
 Because Plaintiffs alleged that the release of hazardous substances caused their injuries, the district court considered whether applying the federal standard for commencement of state limitations periods under CERCLA would start the limitations period running at a later date than under California law. O'Connor, 92 F.Supp.2d at 1036 n. 19. Comparing CERCLA's federal standard to California's delayed discovery rule, which postpones the start of the limitations period until a plaintiff suspects or should have suspected their claims, the district court concluded that, in this case, the state and federal standards were the same. Id. The district court held that Plaintiffs' claims were untimely because, under California's discovery rule, Plaintiffs suspected or should have suspected the cause of their illnesses more than a year before they filed their claims. Id.
 
 
 5
 We hold that (1) the district court erred in concluding that the federal and California standards are the same, and (2) the federal discovery standard applies here. We also conclude that, under the federal discovery rule, summary judgment was improper because there are genuine issues of material fact regarding whether Plaintiffs knew or should have known of their claims within the limitations period. However, we affirm the district court's ruling barring the claims of thirty-four of the Plaintiffs in light of their failure to explain adequately how and when they discovered their claims.
 
 
 BACKGROUND
 
 
 A. The Parties
 
 
 6
 Plaintiffs are fifty-two persons[2] who reside or in the past resided in the San Fernando Valley and Simi Valley regions (hereinafter "San Fernando Valley") of southern California. They have been diagnosed with a variety of cancers and other illnesses. These illnesses include cancers of the thyroid, brain, cervix, breast, lung, ovaries, bladder, prostate, pancreas, and stomach; leukemia; lymphoma; hypothyroidism; infertility; and multiple chemical sensitivity sensory neuropathy.
 
 
 7
 Defendants own or have operated the Rocketdyne facilities, located in Los Angeles and Ventura Counties. The Rocketdyne facilities have been in operation for more than fifty years. The federal government and private entities have used the facilities to conduct testing of rocket and energy technologies, including nuclear technologies. Plaintiffs alleged that testing at the facilities has involved various radioactive contaminants and non radioactive hazardous chemicals. Some Plaintiffs resided in close proximity to the Rocketdyne facilities; others lived miles away.
 
 
 B. Proceedings Before the District Court
 
 
 8
 On March 10, 1997, six plaintiffs filed the original complaint in this action, asserting individual and class claims for personal and property injuries. Plaintiffs amended the complaint several times, joining new plaintiffs and adding new claims with supporting allegations. Plaintiffs filed the fourth amended complaint ("Complaint") on March 30, 1998. On behalf of the personal injury and wrongful death plaintiffs, the Complaint alleges state tort claims of negligence, negligence per se, and strict liability for ultrahazardous activities. It also asserts a claim under the Price-Anderson Act, 42 U.S.C. § 2210, alleging injury from past nuclear accidents at the Rocketdyne facilities.
 
 
 9
 Thirty-seven plaintiffs joined this action with the second amended complaint on June 27, 1997. Twenty-nine joined with the filing of the third amended complaint on December 22, 1997, and seven with the fourth amended complaint on March 30, 1998. All Plaintiffs alleged that they discovered their claims on September 11, 1997, when UCLA released the results of an epidemiological study concluding that employees at one of the four Rocketdyne facilities, the Santa Susana Field Laboratory ("SSFL"), were at an increased risk of contracting cancer.
 
 
 10
 On December 27, 1999, Defendants filed a motion for summary judgment on the ground that the statute of limitations barred all of Plaintiffs' claims. Plaintiffs countered that the one-year limitations period did not begin until September 1997 when news of the UCLA study alerted them to the connection between the Rocketdyne facilities and their illnesses, and that they filed their action within the year.
 
 
 11
 The district court granted Defendants' motion. It ruled that, as a matter of law, past publicity about releases of potentially hazardous substances from the Rocketdyne facilities should have led forty-eight of the fifty-two Plaintiffs to suspect prior to the release of the UCLA study that Defendants caused their injuries. O'Connor, 92 F.Supp.2d at 1041, 1051, 1054-55. With respect to thirty-four of the fifty-two Plaintiffs, the district court held in the alternative that their failure to explain how they discovered their claims before filing suit barred those claims.
 
 
 12
 The district court granted Plaintiffs' motion for entry of a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Plaintiffs appeal the district court's summary judgment in favor of Defendants.
 
 
 DISCUSSION
 
 
 13
 The primary focus of this appeal concerns the district court's ruling that the statute of limitations barred Plaintiffs' claims because Plaintiffs filed their claims more than one year after discovering them. We review de novo the district court's summary judgment. Messick v. Horizon Indus. Inc., 62 F.3d 1227, 1229 (9th Cir.1995). We hold that the district court erred in concluding that the standard for discovery of claims under California law is the same as the federal standard under CERCLA. Because the California standard results in an earlier commencement date for the statute of limitations, the district court should have applied the federal standard.
 
 
 14
 Applying the federal standard, we reverse the district court's ruling that as a matter of law publicity about the Rocketdyne facilities was sufficient for a reasonable plaintiff to know that Defendants' actions were the cause of his or her injury. We conclude that there are genuine issues of material fact that a jury must resolve as to whether Plaintiffs should have known of their claims under the federal discovery standard. Finally, we affirm the summary judgment against thirty-four Plaintiffs because they failed to offer evidence sufficient to raise a triable issue of fact regarding how and when they discovered their claims.
 
 I.
 
 15
 The district court's error here was twofold. First, the district court erred in concluding that the federal discovery rule under CERCLA governing commencement of limitations periods was equivalent to California's discovery rule, and in applying the California rule. Second, under CERCLA's discovery rule, summary judgment was improper because factual disputes remain over whether Plaintiffs knew or should have known of their claims more than a year before they filed them.
 
 
 16
 
 A. CERCLA's Federal Commencement Rule Applies to Plaintiffs' State Tort Claims
 
 
 
 17
 
 1. The federally required commencement date preempts California's discovery rule
 
 
 
 18
 The district court concluded that, in this case, the federal standard for discovery of claims was the same as the state standard, and under either standard, the limitations period would bar Plaintiffs' claims as a matter of law. "[B]ecause the accrual date would be the same under either rule," it reasoned, the "CERCLA discovery rule does not preempt the California discovery rule." O'Connor, 92 F.Supp.2d at 1036 n. 19. We disagree. We hold that CERCLA preempts California's discovery rule and that the California limitations period did not commence until Plaintiffs knew or should have known of their claim.
 
 
 2. 42 U.S.C. § 9658
 
 Section 9658 provides:
 
 19
 § 9658. Actions under State law for damages from exposure to hazardous substances
 
 
 20
 (a) State statutes of limitations for hazardous substance cases
 
 
 21
 (1) Exception to State statutes
 
 
 22
 In the case of any action brought under State law for personal injury ... which [is] caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
 
 
 23
 The effect of this provision is to ensure that if a state statute of limitations provides a commencement date for claims of personal injury resulting from release of contaminants that is earlier than the commencement date defined in § 9658, then plaintiffs benefit from the more generous commencement date. Section 9658 defines the "federally required commencement date" for state limitations periods as "the date the plaintiff knew (or reasonably should have known) that the personal injury... w[as] caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A).
 
 
 24
 Thus, § 9658 preempts California's commencement date if that date is earlier than the federally required commencement date. See Tucker v. Southern Wood Piedmont Co., 28 F.3d 1089, 1093 (11th Cir.1994) (interpreting § 9658 to ensure "effective preemption of state statutes of limitation"); Angeles Chem. Co. v. Spencer & Jones, 44 Cal.App.4th 112, 51 Cal.Rptr.2d 594, 599 (1996) ("Practically speaking, CERCLA essentially preempts state statutes of limitations if ... the applicable limitations period provides for an earlier commencement date than federal law." (internal quotations and citations omitted)). We must therefore determine whether the limitations period for Plaintiffs' claims would commence earlier under state law than under § 9658. If so, then we apply federal law. See Elec. Power Bd. of Chattanooga v. Monsanto Co., 879 F.2d 1368, 1378 (6th Cir.1989) (comparing federal and state standards for discovery of claims). On the other hand, if the commencement date is later under state law than under federal law, or they are the same, we apply the state law standard. See id. (holding that the federal and state standards were the same, and that both barred the plaintiffs' claims); Angeles Chem. Co., 51 Cal.Rptr.2d at 599-600("[W]here a state applies the discovery rule, such that the statute of limitations commences on the same date under both state law and CERCLA, there is no federal preemption."). Here, because the federal standard under CERCLA is more generous than California law in tolling the statute of limitations when a plaintiff's discovery of her claims is delayed, the federal commencement date preempts California's discovery rule.
 
 
 25
 
 3. The discovery rule: Federal versus California standards
 
 
 
 26
 Because "it is inequitable to bar someone who has no idea he has been harmed from seeking redress, the statute of limitations has generally been tolled by the `discovery rule.'" Bibeau v. Pac. N.W. Research Found. Inc., 188 F.3d 1105, 1108 (9th Cir.1999), amended by 208 F.3d 831 (9th Cir.2000). Under both federal and California law, the discovery rule provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered, his claim. Id. at 1108; accord Norgart v. Upjohn Co., 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79, 88 (1999). Because "[t]he plaintiff must be diligent in discovering the critical facts" a plaintiff who did not actually know of his claim will be barred "if he should have known [of it] in the exercise of due diligence." Bibeau, 188 F.3d at 1108; accord Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923, 927 (1988). A plaintiff is "held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." Jolly, 245 Cal.Rptr. 658, 751 P.2d at 927. This concept of constructive notice is captured by the maxim that "the means of knowledge are the same thing in effect as knowledge itself." Wood v. Carpenter, 101 U.S. 135, 143, 25 L.Ed. 807 (1879).[3]
 
 
 27
 In requiring actual or constructive knowledge of the cause of an injury before Plaintiffs can be deemed to be on notice of their claims, § 9658 invokes a formulation of the discovery rule that has been commonly applied in the federal courts. A plaintiff knows or reasonably should know of a claim when he or she knows "both the existence and the cause of his injury." See United States v. Kubrick, 444 U.S. 111, 113, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); Bibeau, 188 F.3d at 1108 (holding that the limitations period does not begin to run until a plaintiff "has knowledge of the critical facts of his injury, which are that he has been hurt and who has inflicted the injury") (internal quotation marks and citations omitted).
 
 
 28
 California courts have formulated the standard for determining when a plaintiff is on inquiry notice in a way that is fundamentally distinct from the federal standard set forth in § 9658. Under California law, a plaintiff discovers a claim when the plaintiff "suspects or should suspect that her injury was caused by wrongdoing." Jolly, 245 Cal.Rptr. 658, 751 P.2d at 927; Norgart, 87 Cal.Rptr.2d 453, 981 P.2d at 88 ("the plaintiff discovers the cause of action when he at least suspects a factual basis ... for its elements"). By its terms, § 9658 sets a later date for commencement of the limitations period, tolling the start of the period for filing claims beyond the date that a plaintiff suspects the cause of injury until the time that he or she knows or reasonably should have known of that cause.
 
 
 29
 Several federal courts have distinguished the federal knowledge standard from a standard that commences a limitations period when a plaintiff merely suspects the cause of injury, reasoning that the federal standard requires more than suspicion alone. See, e.g., Evenson v. Osmose Wood Preserving Co., 899 F.2d 701, 705 (7th Cir.1990) (stating that "we disagree with defendants that a layperson's mere suspicion, even when coupled with the start of an investigation, automatically triggers the statute"); Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10th Cir.1985) ("The statute cannot start running when the plaintiff merely knows or should know that there is a suspected link between a particular substance and cancer in general." (emphasis added)); Ballew v. A.H. Robins Co., 688 F.2d 1325, 1327 (11th Cir.1982) (holding that evidence of "a suspicion of a causal link between [plaintiff's] infection and the Dalkon shield" was insufficient to commence the limitations period).
 
 
 30
 Conversely, under the California discovery rule, "the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof." Norgart, 87 Cal.Rptr.2d 453, 981 P.2d at 88. The California Supreme Court disapproved an interpretation of the discovery rule that "require[s] that a plaintiff must do more than suspect a factual basis for the elements of a cause of action in order to discover the cause of action." Id. at 97 n. 8 (disapproving Bristol-Myers Squibb Co. v. Superior Court, 32 Cal.App.4th 959, 38 Cal.Rptr.2d 298 (1995)).
 
 
 31
 In sum, we reject an interpretation of the federal discovery rule that would commence limitations periods upon mere suspicion of the elements of a claim. Under the circumstances presented here, such a standard would result in "the filing of preventative and often unnecessary claims, lodged simply to forestall the running of the statute of limitations." McGraw v. United States, 281 F.3d 997, 1003 (9th Cir.2002), amended by 298 F.3d 754 (9th Cir.2002). We seek to forestall such a "legal cascade." Id. Because application of California's suspicion standard would result in an earlier commencement date for the one-year limitations period than the federal commencement date, we hold that the federal discovery rule under § 9658 preempts the California rule.
 
 
 32
 
 4. The absence of an underlying CERCLA claim does not preclude application of the federal discovery rule
 
 
 
 33
 Defendants contend that the federal standard for discovery of claims does not apply to Plaintiffs' state tort claims because Plaintiffs, as individuals, have not alleged an underlying CERCLA claim.[4] We disagree. Section 9658 applies to actions that assert state law claims without an accompanying CERCLA claim.
 
 
 34
 Defendants' argument overlooks the plain language of § 9658. CERCLA's rule for commencement of state limitations periods applies to this action because Plaintiffs allege claims "under State law" for personal injury relating to environmental contaminants. See 42 U.S.C. § 9658; see also Tucker, 28 F.3d at 1093(explaining that the purpose of § 9658 "was to deal with the inadequacies of many state tort systems regarding the delayed discovery of the effect of a release of a toxic substance"); see also Angeles Chem. Co., 51 Cal.Rptr.2d at 596, 598-602(applying § 9658 to a complaint alleging only state law claims). Consistent with the explicit terms of § 9658(a), Plaintiffs have brought an "action ... for personal injury ... which [is] caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility."
 
 
 35
 A "pollutant or contaminant" includes substances that "after release into the environment and upon exposure ... may reasonably be anticipated to cause death, disease, ... [or] cancer." 42 U.S.C. § 9601(33). Many of the substances that Plaintiffs allege were released from the Rocketdyne facilities qualify as "pollutants" or "contaminants" and are likely "hazardous substances" as well. See 42 U.S.C. § 9601(14)(defining "hazardous substance"). The allegations of the Complaint attribute Plaintiffs' injuries to the "release" of such substances from "facilities," within CERCLA's definitions of those terms. See 42 U.S.C. §§ 9601(9) (broadly defining "facility"), 9601(22) (broadly defining "release"). Thus, by its terms, § 9658 applies to Plaintiffs' state law claims.
 
 
 36
 The legislative history of the Superfund Amendments and Reauthorization Act of 1986 confirms this result. It indicates that, after receiving recommendations concerning the inadequacy of state laws, Congress fully intended § 9658 to alter the statute of limitations rules applicable to state law claims, regardless of whether plaintiffs also asserted CERCLA claims. See H.R.Rep. No. 99-962, 132 Cong. Rec. H9032-04 (1986) (discussing need for liberalization of state statutes of limitations); H.R.Rep. No. 99-253(I) (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2960 (viewing provision as "[s]tate procedural reform" and contemplating that federal rule would apply even in actions brought in state court); see also Angeles Chem. Co., 51 Cal.Rptr.2d at 598-99(describing focus in CERCLA's legislative history on remedying overly restrictive limitations periods for state law claims).[5]
 
 
 37
 
 B. Summary Judgment Was Improper Under the Federal "Knew (or Reasonably Should Have Known)"
 
 
 
 38
 Summary judgment is proper only if there are no genuine issues of material fact in dispute and Defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists if, on the basis of the evidence that was before the district court at the time of its ruling, the jury could reasonably find for Plaintiffs. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We draw all reasonable inferences from the evidence in favor of Plaintiffs, as the parties opposing summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When the evidence yields conflicting inferences, summary judgment is improper, and the action must proceed to trial. Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1087(9th Cir.2000).
 
 
 39
 Because Plaintiffs have the burden of proof at trial to establish that they are entitled to the benefit of the discovery rule, to defeat summary judgment they were required to come forward with evidence establishing a triable issue of fact with regard to whether the discovery rule applies. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Calif Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1406-07 (9th Cir.1995). Summary judgment was improper here unless the only reasonable inference that can be drawn is that Plaintiffs knew or should have known more than one year before filing their claims that the Rocketdyne contamination was the cause of their diseases. Munger, 227 F.3d at 1087.
 
 
 40
 Review of the record does not lead inexorably to a single inference that Plaintiffs knew or suspected the cause of their injuries more than one year before filing their claims. Courts routinely recognize the "fact-intensive nature" of the determination of when a plaintiff is on notice of a claim. See Bibeau, 188 F.3d at 1108; Maughan, 758 F.2d at 1387. Critical factual disputes that govern when Plaintiffs knew or should have known of their claims preclude summary judgment here. See id. (noting that "what a plaintiff knew and when he knew it are questions of fact" (internal brackets and citation omitted)).
 
 
 41
 A two-part analysis determines whether Plaintiffs reasonably should have known of their claim. Bibeau, 188 F.3d at 1109; see Kubrick, 444 U.S. at 122, 100 S.Ct. 352. The goal of this analysis is to evaluate when a reasonable person would have connected his or her symptoms to their alleged cause. Bibeau, 188 F.3d at 1109. First, we consider whether a reasonable person in Plaintiffs' situation would have been expected to inquire about the cause of his or her injury. See id. Second, if the plaintiff was on inquiry notice, "we must next determine whether [an inquiry] would have disclosed the nature and cause of plaintiff's injury so as to put him on notice of his claim." Id.; see also Maughan, 758 F.2d at 1389. The plaintiff will be charged with knowledge of facts that he would have discovered through inquiry. Bibeau, 188 F.3d at 1109.
 
 
 1. Inquiry notice
 
 
 42
 The initial step focuses on whether a plaintiff could reasonably have been expected to make an inquiry in the first place. Id. Particularly when a plaintiff has cancer, the answer to this question may depend on whether there are a number of potential causes. See Dubose v. Kansas City S. Ry., 729 F.2d 1026, 1031 (5th Cir.1984) ("When a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist[.]"). As the Tenth Circuit explained:
 
 
 43
 There are many suspected causes of cancer, many of which are natural or non-negligent and would not give rise to a legal cause of action. Thus a potential plaintiff, on learning that he has cancer, lacks the usual incentive to investigate the possibility that the known injury may give rise to a legal claim.
 
 
 44
 Maughan, 758 F.2d at 1385.
 
 
 45
 Thus, whether Plaintiffs knew or should have known that the contamination from the Rocketdyne facilities caused their injuries depends on whether a reasonable person would have inquired about the cause of his injury in light of public knowledge about the causes of cancer and other latent diseases, including publicity about the release of hazardous substance from the Rocketdyne facilities as well as other potential causes. See Dubose, 729 F.2d at 1031; Maughan, 758 F.2d at 1388. We conclude that summary judgment was improper because the evidence was susceptible to more than one inference regarding whether Plaintiffs were aware of more than one potential cause of their illnesses. Factual disputes remain regarding whether Plaintiffs should have inquired about whether the contamination from the Rocketdyne facilities, rather than any other source, was connected to their illnesses. Bibeau, 188 F.3d at 1108-09(examining various possible sources for plaintiff's symptoms).
 
 
 46
 More than one inference can be drawn whether, prior to the UCLA study, Plaintiffs should have inquired about a causal link between their illnesses and the Rocketdyne contamination. See id. The medical advice that Plaintiffs received from their doctors and publicity about potential causes of cancer reasonably could have led Plaintiffs to suspect that their illnesses resulted from causes unrelated to the Rocketdyne contamination. In their declarations, Plaintiffs state that their doctors did not advise them that their conditions might be related to, or caused by, Defendants' release of hazardous non-radioactive substances and radioactive contaminants. See Maughan, 758 F.2d at 1389("Relevant factors to be considered include the undisputed fact that several of the plaintiffs in this case did ask their doctors what had caused the leukemia, and all were told that the cause was unknown."). Defendants do not contend that any of Plaintiffs' physicians or any of their voluminous medical records have suggested a link between Plaintiffs' illnesses and Defendants' activities.
 
 
 47
 Moreover, to substantiate Plaintiffs' contention that a genuine issue of material fact exists whether they were on inquiry notice that the Rocketdyne facilities were the cause of their illnesses, Plaintiffs introduced evidence of extensive publicity between 1989 and 1996 warning that a variety of products — from tobacco, pesticides and diesel fuel to peanut butter, nail polish, cellular telephones and radar guns — were potential causes of cancer. They also presented a profusion of public notices from local businesses disclosing the use of a variety of carcinogens.
 
 
 48
 In addressing Plaintiffs' evidence, the district court acknowledged that a plaintiff might suspect a number of different possible causes but held nonetheless that, in this case, suspicion of other causes could not "nullify a suspicion" that Defendants' releases of hazardous substances was the cause. O'Connor, 92 F.Supp.2d at 1051. The district court's application of the "suspects or should suspect" rule under these circumstances would compel a plaintiff to file suit against all suspected sources of chronic illness to prevent the running of the statute of limitations. See Maughan, 758 F.2d at 1387 (noting that a "rule that the statute begins to run as soon as a plaintiff becomes aware that a particular substance is suspected to cause cancer in some people would be absurd, for it would force the plaintiff to file suit against all suspected sources of carcinogens simply to prevent the statute from running"); Franconia Assocs. v. United States, 536 U.S. 129, ___, 122 S.Ct. 1993, 1996, 153 L.Ed.2d 132 (2002) (raising the specter of the defendant finding itself "defending against highly speculative damages claims in a profusion of lawsuits, most of which would never have been brought under a less novel interpretation of" the statute of limitations).
 
 
 49
 In support of summary judgment and to counter Plaintiffs' statements that they had limited knowledge of publicity about possible contamination from the Rocketdyne facilities, Defendants introduced numerous news articles and publicly available documents that demonstrate that there has been unease about the Rocketdyne facilities for decades. Defendants documented the level of community concern from reports of releases of potentially hazardous substances at the Rocketdyne facilities.
 
 
 50
 The district court committed two errors in concluding that publicity about the Rocketdyne facilities put Plaintiffs on notice of a connection between their illnesses and releases from Defendants' facilities. First, it improperly made a factual finding that publicity about the Rocketdyne facilities was sufficiently notorious to impute Plaintiffs with knowledge of it.[6] Second, it erroneously concluded that the only reasonable inference to be drawn from that publicity was that Plaintiffs should have suspected a connection to the Rocketdyne contamination.[7]
 
 
 a. Notoriety of news reports about the contamination
 
 
 51
 The district court erred in concluding as a matter of law that newspaper reports concerning the Defendants' facilities were sufficiently "numerous and notorious" to impute knowledge of them to Plaintiffs. O'Connor, 92 F.Supp.2d at 1047. The district court held that a "reasonable, prudent subscriber" of newspapers in the area, and a "reasonably diligent person living in the area for a substantial period of time between" 1989 and 1991 would have become aware of the release of contaminants from SSFL. Id. at 1044, 1048.
 
 
 52
 This evaluation of the awareness in Plaintiffs' various communities of a specific fact or event was uniquely an issue for the jury to resolve. See In re Swine Flu Prods. Liab. Litig., 764 F.2d 637, 640-41 (9th Cir.1985) (reversing summary judgment when the record reflected a genuine dispute over "the extent of community knowledge during the period [the plaintiff] could properly have brought suit"). This determination required a fact-intensive examination of the geographic scope of the circulation of various publications, the level of saturation of each publication within the relevant communities, the frequency with which articles on the Rocketdyne facilities appeared in each publication, the prominence of those articles within the publication, and the likelihood that a reasonable person living in Plaintiffs' various communities at the same time as Plaintiffs would have read such articles. These are all factual questions unsuitable for summary judgment. See Bibeau, 188 F.3d at 1110(holding "litany of news reports and other public revelations" insufficient to sustain summary judgment on the basis of the statute of limitations because of the factual nature of inquiry into plaintiff's exposure to articles, the educational level of plaintiff, and whether there was reason for concern about the effect of defendants' conduct on plaintiff's health). The delicate lines that the district court drew to resolve each of these issues are a testament to the fundamentally factual nature of the inquiry.[8]
 
 
 b. Reasonable inferences regarding causation from publicity about Rocketdyne
 
 
 53
 Even if Plaintiffs should have been aware of publicity about the Rocketdyne facilities, reasonable inferences conflict about whether that publicity would have put Plaintiffs on inquiry notice more than one year before filing their claims that contamination from the Rocketdyne facilities caused their illnesses. See Munger, 227 F.3d at 1087. Plaintiffs contend, in effect, that it is unreasonable to infer on summary judgment that they should have inquired about whether the contamination caused their diseases until the results of the UCLA study became public. We agree.
 
 
 54
 To reach the conclusion that Plaintiffs had discovered their claims prior to the limitations period, the district court imputed to Plaintiffs knowledge of media coverage of contamination in the vicinity of the Rocketdyne facilities. The district court's ruling emphasizes that, particularly in the early 1980s and from the late 1980s to the early 1990s, two periods in which public scrutiny seems to have been most intense, there were a number of reports of "contamination" from the Rocketdyne Facilities and the "issue of contamination" was discussed in articles and public meetings. See O'Connor, 92 F.Supp.2d at 1031-1035. The district court also relied on news reports of various studies undertaken to shed light on the health effects, if any, of the releases from the Rocketdyne facilities. The court imputed to some Plaintiffs knowledge of a 1989 Department of Energy ("DOE") report concluding that "there were contamination problems at SSFL," and to others knowledge of a 1990 California Department of Health Services ("DHS") report "suggesting a possible connection between Rocketdyne facilities and increased cancer in the surrounding communities." Id. at 1033, 1050.
 
 
 55
 The reports of contamination and Defendants' potential wrongdoing were insufficient to place Plaintiffs on inquiry notice of their claims. Whether Plaintiffs would have suspected on the basis of these media reports that Defendants' contamination caused their injuries, in light of the evidence that the parties presented, is fundamentally a question of fact. Swine Flu Prods., 764 F.2d at 640-41.
 
 
 56
 The studies that the district court relied on in granting summary judgment illustrate the fact-intensive nature of the causation question. The 1989 DOE report summarized its findings:
 
 
 57
 The Survey found no environmental problems at SSFL that represent an immediate threat to human life. The preliminary findings identified by the Survey do indicate that a few areas are actual or potential sources of soil and/or groundwater contamination and that inadequacies in the ground-water monitoring system make it difficult to characterize the nature and extent of contamination.
 
 
 58
 The environmental problems described in this report vary in terms of their magnitude and risk. A complete understanding of the significance of some of the environmental problems identified requires a level of study and characterization that is beyond the scope of the Survey.
 
 
 59
 (emphasis added). Moreover, the DOE team did not purport to study health problems in surrounding communities. The 1990 DHS study similarly reported that the observed cancer incidence rates may have resulted from factors not related to exposure to the waste site and acknowledged that those factors could not be evaluated with the data then available.
 
 
 60
 A 1999 "Preliminary Site Evaluation" of the SSFL by the Agency for Toxic Substances and Disease Registry[9] (hereinafter, 1999 ATSDR Study) emphasized that identifying evidence of "contamination" by substances that have potential health effects is only a preliminary step in assessing actual health effects:
 
 
 61
 With regard to chemicals and radionuclides, not all exposures result in adverse health effects. Several factors determine whether exposure to a chemical or radionuclide has the potential to cause harm. These factors include the contaminant concentration, the exposure duration and frequency, the route of exposure, the toxicity or radioactivity of the substances, and the way the substance is handled by the body following exposure.
 
 
 62
 The study concludes that "[t]he release of hazardous substances does not necessarily result in harm to humans. There must be human contact with these substances at levels of health concern before there is potential for exposure-related health effects."
 
 
 63
 These statements demonstrate the complexity of evaluating the likelihood that the contamination related to Plaintiffs' injuries, particularly for Plaintiffs with little or no scientific background. See Maughan, 758 F.2d at 1385 (justifying application of the discovery rule "[b]ecause of the complexity of the scientific data concerning causation of cancer, the disparity of knowledge between plaintiffs and potential defendants, and the often long latency period of the disease").
 
 
 64
 The evidence of publicity that the district court relied on did not connect these dots. None of the publicity from this period suggested that available evidence established contamination from the Rocketdyne facilities as the likely cause, among many possible causes, of public health problems. The media reports and expressions of community concern about the contamination were, at best, equivocal about such a link.
 
 
 65
 Two aspects of the publicity stand out. First, numerous documents identify as the primary basis of community concern the lack of public knowledge about the activities at the Rocketdyne facilities, about the level of contamination from the facilities, and about community health consequences. Second, to the extent that the documents draw conclusions — other than conclusions about the subjective fear caused by the Rocketdyne facilities — it is that further study was needed to draw any responsible conclusions. See Tucker v. Baxter Healthcare Corp., 158 F.3d 1046, 1050 (9th Cir.1998) (tolling California's statute of limitations because possible causal relationship between silicone implants and autoimmune disease was not well-known in 1986).
 
 
 66
 Articles about the early studies of the health effects of the contamination sent mixed messages. The media reported that the 1989 DOE study had found no evidence of an immediate health threat and emphasized that further tests were needed. A news report on the 1990 DHS study stated that there was "no evidence of a health threat to workers or the public." In contrast, the 1997 UCLA study sought to resolve these questions with respect to the health of Rocketdyne employees. DHS commissioned the study to determine whether workers at SSFL experienced excessive mortality from cancer as a result of work-related exposures to radiation. For the first time, the study reported an "observed positive relationship between external radiation and lung cancer mortality," as well as increasing trends in mortality rates for other categories of cancers.
 
 
 67
 Assuming Plaintiffs had seen the media reports, one reasonable inference is that, until learning of UCLA's findings, Plaintiffs relied on the public statements that there was no immediate health threat to the community. Moreover, the evidence Plaintiffs submitted of publicity surrounding numerous suspected causes of cancer not related to the Rocketdyne facilities permits the inference that a reasonable plaintiff would have imputed the cause of his or her illness to commonly-known sources other than the Rocketdyne facilities.
 
 
 68
 Thus, the record supports conflicting inferences about whether Plaintiffs were on inquiry notice that the contamination caused their diseases. See Bibeau, 188 F.3d at 1109; Maughan, 758 F.2d at 1389. It does not establish that Plaintiffs were aware that releases from the Rocketdyne facilities were the likely cause, among other causes, of their injuries. These issues of fact are the province of the jury. See Munger, 227 F.3d at 1087 ("[W]here conflicting inferences may be drawn from the facts, the case must go to the jury." (internal quotations and citations omitted)).
 
 
 69
 2. Whether a reasonable inquiry would have put Plaintiffs on notice of their claim
 
 
 70
 The second prong of the test for application of the discovery rule is whether a reasonable inquiry would have put Plaintiffs on notice of their claim. Bibeau, 188 F.3d at 1109; see also Maughan, 758 F.2d at 1389. This second step focuses on whether, if the Plaintiffs had inquired about the cause of their illnesses, the result of that inquiry would have provided Plaintiffs with knowledge of the connection between the injury and its cause. Dubose, 729 F.2d at 1029(holding that the rule that limitations periods do not commence "until plaintiff knows the facts of injury and causation... should be applied in federal cases whenever a plaintiff is not aware of and has no reasonable opportunity to discover the critical facts of his injury and its cause"); Kubrick, 444 U.S. at 122, 100 S.Ct. 352 (noting barriers to knowledge of causation when "the facts about causation [are] in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain"). Here, too, a plaintiff who has cancer may not have the means to test which, if any, of the possible causes have a substantive basis so as to put the plaintiff on notice of the claim:
 
 
 71
 In addition, even if he attempts to determine the cause of the disease, he is confronted with a mass of complex, controversial and rapidly changing scientific data and opinions. Lacking the resources and knowledge necessary to carry out their own research into causation, potential plaintiffs must rely on potential defendants — the government and large commercial enterprises — which have the resources to carry out the necessary studies.
 
 
 72
 Maughan, 758 F.2d at 1385.
 
 
 73
 Even if Plaintiffs were on inquiry notice of the cause of their illnesses, genuine issues of material fact preclude summary judgment on this second prong. The evidence conflicts as to when Plaintiffs had the means to test the potential causes of their diseases in a way that would "disclose[] the nature and cause" of their injuries so as to put them on notice of their claims. Bibeau, 188 F.3d at 1109; Magana v. Commonwealth of the N. Mariana Islands, 107 F.3d 1436, 1448(9th Cir.1997). The parties dispute whether Plaintiffs had the means to discover, prior to the UCLA study, that contamination at the Rocketdyne facilities caused their illnesses. See Maughan, 758 F.2d at 1389.
 
 
 74
 If Plaintiffs could not have discovered that Defendants caused their injuries prior to the study's release despite duly inquiring, then they timely filed their claims. In Tucker, we tolled California's statute of limitations because it was unlikely that the plaintiff would have been able to locate information regarding the possible link between her injury and the defective product. 158 F.3d at 1048(noting that in Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1120(9th Cir.1994), we tolled California's statute of limitations when "timely investigation would not have revealed the relationship between silicone implants and autoimmune disease"). Under these circumstances, involving latent diseases allegedly resulting from exposure to toxins, if Plaintiffs could not discern which among many possible suspected causes was the likely cause of their illnesses, the statute of limitations is tolled. See Maughan, 758 F.2d at 1385. An average plaintiff alleging a connection between latent disease and exposure to hazardous substances does not have the means to conduct the type of comprehensive epidemiological study necessary to bridge the causation gap. In New v. Armour Pharmaceutical Co., in which discovery of the plaintiff's injury was the focus of the dispute, we tolled the limitation period because the plaintiff "could not have discovered [his injury] with all the diligence in the world." 67 F.3d 716, 721 (9th Cir.1995). Thus, this factor too raises issues of fact regarding whether, assuming Plaintiffs were on inquiry notice of their claims, they could have discovered their claims through reasonable investigation. Because material issues of fact exist regarding when, under the federal discovery rule, Plaintiffs knew or should have known that Defendants' contamination caused their injuries, the district court erred in concluding that Plaintiffs had discovered all of the essential facts constituting their cause of action prior to release of the 1997 UCLA study. Plaintiffs are therefore entitled to a jury's determination of the factual issues underlying the application of the discovery rule. See Munger, 227 F.3d at 1087; Tucker, 158 F.3d at 1050. A jury must decide (1) whether to impute knowledge of the contamination to Plaintiffs, (2) whether the Plaintiffs were on inquiry notice that the Rocketdyne facilities were the likely cause of Plaintiffs' illnesses, and (3) when Plaintiffs had the means to discover the facts to support their claim. Bibeau, 188 F.3d at 1108-10.
 
 II.
 
 75
 The final issue concerns the fate of the thirty-four Plaintiffs who joined this action before release of the UCLA study. At summary judgment, Plaintiffs have a duty to explain, and support by way of evidence, how they discovered their claims. McKelvey v. Boeing N. Am., Inc., 74 Cal.App.4th 151, 86 Cal.Rptr.2d 645, 651 n. 11 (1999) (explaining that to invoke the discovery rule, "the plaintiff must plead (and later prove) the facts showing... how and when he did actually discover" his claim); see also Hopkins, 33 F.3d at 1120.
 
 
 76
 The Complaint asserts that none of the Plaintiffs discovered their claims until release of the UCLA Study in September 1997. Yet, thirty-four of the Plaintiffs filed their claims before September 1997. Ruling that these Plaintiffs "fail[ed] to show how and when a claim filed prior to that date was discovered," the district court granted summary judgment against them because they failed to meet their burden of establishing that the discovery rule applied to their claims. O'Connor, 92 F.Supp.2d at 1041.
 
 
 77
 In their briefs before this court, Plaintiffs offered the explanation that, prior to the release of the 1997 UCLA study, they were aware that its release was pending and filed their claims protectively, "in order to safeguard themselves against any future argument that their failure to act sooner had resulted in their claims being time-barred." In an appropriate case, a plaintiff's admission that he filed prematurely could be sufficient to satisfy his pleading requirement and burden of proof. See Evenson, 899 F.2d at 704 n. 4 (accepting plaintiff's explanation that he filed action protectively).
 
 
 78
 However, those Plaintiffs who filed their claims prior to release of the 1997 UCLA Study did not submit any evidence to support their counsel's explanation. Plaintiffs' declarations do not actually set forth the explanation that appears in their briefs. And the explanation in the briefs is unaccompanied by any details that Defendants could meaningfully address.
 
 
 79
 The requirement that plaintiffs explain how and when they discovered their claims serves an important purpose. McKelvey, 86 Cal.Rptr.2d at 651. Knowledge of the facts that led a plaintiff to believe it was appropriate and necessary to bring a claim is a matter peculiarly within the knowledge of the plaintiff. A defendant may not have a fair opportunity to controvert a plaintiff's invocation of the discovery rule unless the plaintiff identifies the facts that he or she claims put him or her on notice. Without this requirement, a plaintiff might be able to defeat a limitations defense by categorically denying knowledge of any facts that the defendant proposes put the plaintiff on notice.
 
 
 80
 Under these circumstances, these Plaintiffs failed to meet their burden. The district court's order to amend the complaint to allege facts identifying the time and manner of discovery put Plaintiffs on notice that they later would be put to their proof. When Defendants filed a motion for summary judgment, they were required to submit evidence on matters on which they had the burden of proof. In failing to offer anything but legal argument, Plaintiffs placed Defendants in an untenable position.
 
 
 81
 These Plaintiffs also argue that they should be permitted to amend their complaint. But at the summary judgment stage, it is not defects in the pleadings that are fatal to these Plaintiffs' claims. They failed to offer evidence from which a reasonable trier of fact could conclude that they had met their burden of explaining how and when they discovered their claims. Absent a motion under Rule 56(f) of the Federal Rules of Civil Procedure, that failure of proof cannot be excused.
 
 
 CONCLUSION
 
 
 82
 The district court's summary judgment against those Plaintiffs who filed their claims after the release of the 1997 UCLA Study is REVERSED and REMANDED for further proceedings consistent with this opinion. Those Plaintiffs are Kathleen Brucato, Gerald Creinin, Roy Fischman, Grace Highfield, Miriam Hintz, the Estate of Jason E. Hudlett, Joan Mann, Shirley Orban, Marion Rosen, Denise Seth-Hunter, Randall Trench, Don Varley, Helen White, the Estate of Marrilee Fay Reed, the Estate of Archibald P. Cameron, the Estate of Hai-Chou Chu, the Estate of Ralph Tremonti, Sr., and the Estate of Paula Jean Trevino.
 
 
 83
 The district court's summary judgment against the thirty-four Plaintiffs who filed their claims prior to the 1997 UCLA Study is AFFIRMED. Those Plaintiffs are Mary Christine Crilley, Carmela Anzilotti, Faith Arnold, Lila Arnold, Linda Blaustein, Howard Bleecker, Melissa Bolster, Ashlie Bryant, Jennifer Cady, Heather Cass, Briana Alys Chappell, Mark Leslie Davis, Madeline Felkins, Robert Grandinetti, Norman Gross, Susan Hemming, Julie King, Margaret Kirby, Joy E. Lee, Helen Pasquini, Laurel Ann Peyton, Rosemary Pitts, Emanuel Rubin, William Rueger, Pauline Sablow, Hariet Spero, Donna Stone, Jerry Stone, Mildred Strausburg, Miles Teicher, Jacqueline Teicher, Ralph Tremonti, Victor Wollman, and the Estate of Edward J. Barina. Each side to bear their own costs.
 
 
 84
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 The district court denied summary judgment against seventeen other named plaintiffs, as well as against classes of unnamed plaintiffsO'Connor, 92 F.Supp.2d at 1054-55. Their claims are not at issue here.
 
 
 [2]
 Seven Plaintiffs are estates of decedents
 
 
 [3]
 CitingBartleson v. United States, 96 F.3d 1270 (9th Cir.1996), Defendants argue that the district court's "finding" of constructive notice must be reviewed for "clear error." In Bartleson, we reviewed a district court's findings of fact after a court trial. Defendants erroneously conflate review of legal conclusions underlying a grant of summary judgment with review of factual findings resulting from a court trial.
 
 
 [4]
 Defendants contend that, even if the federal commencement rule of § 9658 applies to Plaintiffs' various state law tort claims, it cannot apply to Plaintiffs' public liability claims under the Price-Anderson ActSee 42 U.S.C. § 2210. The Price-Anderson Act does not provide a statute of limitations generally applicable to public liability actions. Although the district court did not decide this issue, Defendants urge us to apply the state statute of limitations to Plaintiffs' Price-Anderson Act claims, and argue that those claims are untimely. In its order, the district court did not reach the Price-Anderson Act claims. Because we remand for further proceedings, the district court should determine, in the first instance, whether the Price-Anderson Act claims are barred by the discovery rule. Thus, the district court should address whether the state or federal discovery rule applies to those claims.
 
 
 [5]
 Defendants rely onIn re Hanford Nuclear Reservation Litigation, 780 F.Supp. 1551 (E.D.Wash.1991) to argue that § 9658 does not apply to Plaintiffs' state law claims. Hanford agrees, without analysis, with the holding in Knox v. AC & S, Inc., 690 F.Supp. 752, 757 (S.D.Ind.1988), that the federally required commencement date of § 9658 is limited to situations "where there is an underlying CERCLA action." Hanford, 780 F.Supp. at 1574 n. 42. Knox, however, ignores the plain meaning of § 9658. The text of § 9658 demonstrates that it was intended to reach personal injury claims brought "under State law" so long as they meet the specific criteria of § 9658.
 
 
 [6]
 The district court stated: "[T]he Court finds that a reasonable person who subscribed to or regularly read the Daily News or the Valley Papers could not have avoided seeing the articles on the Rocketdyne facilities. The readers and subscribers of those papers will therefore be imputed with knowledge of those articles."O'Connor, 92 F.Supp.2d at 1044-45; see also id. at 1047("The Court finds that this news coverage was so substantial that a reasonable person could not have avoided learning about the [Department of Energy] report.").
 
 
 [7]
 The district court stated: "Accordingly, the Court finds that a reasonable person, who had knowledge of the news reports about SSFL contamination, would suspect that he or she had been exposed to environmental contamination or radiation from at least one of the Rocketdyne facilities."Id. at 1051.
 
 
 [8]
 The cases on which the district court relied are inapposite. InMcKelvey v. Boeing North American, Inc., applying California's "suspects" standard, the California Court of Appeal held that similar claims did not survive a demurrer. 74 Cal.App.4th 151, 86 Cal.Rptr.2d 645, 651-53 (1999). The court, as is proper when reviewing a demurrer, assumed as true the allegations of the complaint that there was publicity prior to the limitations period about Boeing's negligence. In light of the plaintiffs' affirmative allegation of publicity and the failure to allege the time and manner of discovery of their claims, the court held that they had not alleged any facts that would permit invocation of the discovery rule. Here, on summary judgment, the time and manner of discovery and the notoriety of the publicity were disputed, and must be resolved at trial.
 Nor are the remaining cited cases either authoritative or persuasive. See United Klans of Am. v. McGovern, 621 F.2d 152 (5th Cir.1980); Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd., 909 F.Supp. 1353 (C.D.Cal.1995), aff'd by 113 F.3d 1258 (Fed.Cir.1997). Unlike the instant case, both cases involve plaintiffs who had actual knowledge of facts sufficient to put them on notice of their claims. Neither involved the kind of individualized fact-finding about community-specific knowledge attributed to lay plaintiffs that the district court engaged in here. See United Klans, 621 F.2d at 154(affirming limitations bar on the basis of both actual knowledge of the claim and national news coverage over the networks, wire, and major newspapers); Stutz, 909 F.Supp. at 1361-62 (holding in commercial context that actual knowledge of trade secret claims, coupled with the widespread advertisement and sale of the alleged infringing product, precluded the application of the discovery rule).
 
 
 [9]
 The Agency for Toxic Substances and Disease Registry, an arm of the United States Department of Health and Human Services created by Congress when it enacted CERCLA, is charged with conducting public health assessments and health consultations in connection with hazardous waste sites and releases of hazardous substancesSee 42 U.S.C. § 9604(i).
 
 
 
 85
 O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:
 
 
 86
 I agree with the court that the thirty-four Plaintiffs who filed their claims prior to the release of the 1997 UCLA Study failed to make a sufficient evidentiary showing as to how they discovered their claims, and I therefore concur in affirming the grant of summary judgment as analyzed in Part II of the court's opinion. I also concur in the court's remanding to the district court, in the first instance, to determine whether the state or federal discovery rule applies to the Price-Anderson Act claims, as analyzed in footnote 4 of the court's opinion.
 
 
 87
 * I must respectfully dissent, however, from Part I of the court's opinion which reverses the grant of summary judgment against the remaining eighteen Plaintiffs. The majority concludes that the federal discovery standard applies to Plaintiffs' claims because it preempts the California standard under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). However, for purposes of preemption, I fail to see a substantive difference between the two standards.
 
 
 88
 The California Supreme Court in Jolly v. Eli Lilly Co., 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923, 927 (1988) held that under the California standard, "[a] plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." 245 Cal.Rptr. 658, 751 P.2d at 927. Constructive knowledge is also, of course, imputed to plaintiffs under the federal standard and serves to commence the limitations period. Therefore, the California and federal standards are very similar, if not equivalent. Based on this overlap, the district court discounted any insignificant differences in language between the federal and state standards and correctly, in my view, concluded that the accrual date for a cause of action is the same under either rule.
 
 
 89
 Even if the federal discovery rule preempts the California rule, I would still affirm the district court's grant of summary judgment against the remaining eighteen Plaintiffs. Many cases have imputed constructive knowledge to plaintiffs based on extensive and widespread publicity. See, e.g., United Klans of Am. v. McGovern, 621 F.2d 152 (5th Cir.1980); In re Burbank Envtl. Litig., 42 F.Supp.2d 976 (C.D.Cal.1998); Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd., 909 F.Supp. 1353 (C.D.Cal.1995); McKelvey v. Boeing N. Am., Inc., 74 Cal.App.4th 151, 86 Cal.Rptr.2d 645 (1999). The majority tries to distinguish United Klans and Stutz because the plaintiffs there had actual knowledge of their cause of action. However, in discussing the holding of United Klans, the court in Stutz stated, while "plaintiffs could also be charged with actual knowledge, that fact does not vitiate the court's clear determination that widespread publicity alone is sufficient for constructive knowledge." 909 F.Supp. at 1362.
 
 
 90
 Here, the district court concluded, as a matter of law, that the cumulative effect of the undisputed media publicity between 1989 and 1991 was sufficiently frequent and notorious to place Plaintiffs on constructive notice of their claims. The first wave of publicity stemmed from a DOE report detailing contamination problems at SSFL. The Los Angeles Daily News on May 14, 1989 published a front-page article with the headline: "Rockwell site contaminated: Radiation taints Santa Susana lab's soil and water." O'Connor v. Boeing N. Am., Inc., 92 F.Supp.2d 1026, 1032 (C.D.Cal.2000). Between May 16 and June 2, 1989, the Daily News ran almost daily front-page articles concerning Rocketdyne or Valley contamination. Furthermore, the Valley Papers printed over fifteen articles and The Los Angeles Times printed three articles on this issue between May 14 and May 31, 1989. Local government officials and community organizations responded to these news reports in various ways which led to even more news coverage.
 
 
 91
 A second peak of widespread publicity occurred in February 1991 when DHS disclosed a possible connection between the Rocketdyne facilities and increased cancer in the surrounding communities. While the news coverage was not as extensive as it was in May 1989, the Daily News ran two front-page articles, the Los Angeles Times ran four articles, and the Valley Papers ran six articles. One of the headlines of the Daily News' articles read: "Rise in bladder cancer seen near Rockwell site." Id. at 1033.
 
 
 92
 The third and final peak of news coverage occurred in August 1991 when Rocketdyne discovered and disclosed the existence of radionuclide tritium in a groundwater well offsite from SSFL. The Los Angeles Times published an article about the offsite contamination, and the Daily News ran two front-page articles, including one with the headline: "Toxic plume detected in ground water leaving Rockwell lab." Id.
 
 
 93
 The Daily News has a large circulation in the San Fernando Valley, and the news coverage concerning the Rocketdyne facilities was featured prominently and repeatedly on the front page of this publication. It is hard to imagine how a subscriber or regular reader of the Daily News or the Valley Papers could have lacked knowledge of the articles. Therefore, on the basis of this cumulative and widespread publicity, I believe that the district court correctly imputed to Plaintiffs constructive knowledge of the contamination problems at the Rocketdyne facilities.
 
 II
 
 94
 I believe that Plaintiffs have failed to explain adequately how a reasonable person knew or should have known of their claims against Defendants based on the 1997 UCLA Study discussing SSFL contamination but lacked constructive knowledge of their claims from earlier extensive news coverage about the contamination. Accordingly, I believe that the statute of limitations bars these eighteen Plaintiffs' claims and would affirm the district court's grant of summary judgment against all fifty-two Plaintiffs.